THE RICHARD L. ROSEN LAW FIRM, PLLC
John A. Karol (JK-9899)
110 East 59th Street, 23rd Floor
New York, New York 10022
Telephone: (212) 644-6644
Facsimile: (212) 644-3344
jak@rosenlawpllc.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
                                                                  :        **COMPLAINT**
Team Kasa, LLC,                                          :
Karen June, Alexander Gilbert, and              :
AnnMarie Szollosi Gilbert (f.k.a. AnnMarie  :
Szollosi),                                                       :
                                                                  :
                                        Plaintiffs,          :
                                                                  :
                   -against-                                 :
                                                                  :
Brian Pappas,                                              :
FranVentures, LLC,                                      :
Richard Humphrey,                                       :
Franchise BIZ Experts, LLC,                          :
William Litster, and                                      :
Ameridream Investments LLC,                       :
                                                                  :
                                        Defendants.        :
                                                                  :
-------------------------------------------------------- X

Plaintiffs, Team Kasa, LLC ("Team Kasa" or "Franchisee"), Karen June ("Ms. June"),

Alexander Gilbert ("Mr. Gilbert"), and AnnMarie Szollosi Gilbert ("Ms. Gilbert") (collectively,

"Plaintiffs"), by their attorneys, the Richard L. Rosen Law Firm, PLLC, allege against Defendants

Brian Pappas, FranVentures, LLC, Richard Humphrey, Franchise BIZ Experts, LLC, William

Litster and Ameridream Investments, LLC (aka the "Franchise Professor") ("Defendants") as

follows:

1

## NATURE OF THE ACTION

1.     Plaintiff Team Kasa, LLC is a franchisee in a franchise system known as "Bricks 4 Kidz," and the remaining Plaintiffs, Ms. June, and Mr. and Ms. Gilbert, are Team Kasa, LLC's principals and owners.

2.     Plaintiffs bring this action against each of the Defendants for Defendants' violations of the New York Franchise Sales Act, NY GBL §§680 *et seq.* (the "NYFSA") in their individual capacities as either "persons," or "control persons," when they improperly offered or sold Plaintiffs the Bricks 4 Kidz franchise (the franchise) in violation of multiple provisions of the NYFSA.

3.     For example, on February 22, 2014, Mr. Pappas improperly provided an "updated" Federal Disclosure Document ("FDD") to Plaintiffs by e-mail without the requisite statutory waiting period (through his other affiliated entity, FranVentures, LLC), only two days before the Plaintiffs executed their franchise agreements (on February 24, 2014).  This was a disclosure violation under §683 of the NYFSA.  In addition, this belated FDD (which Plaintiffs did not have an adequate statutory opportunity review) contained references to illegal loans, which became the subject of an investigation by the SEC (for inter alia Sarbanes Oxley Act violations), as well as a public and embarrassing litigation between Mr. Pappas and the Franchisor (or rather its parent entity), resulting in chaotic turnover in management, and internal issues within the franchisor and franchise system generally.  The failure to first disclose these loans properly, and also explain the import of such loans, amounted to violations of §687 of the NYFSA (which prohibits material misrepresentations or omissions in the context of an offer or sale of a franchise), since clearly Mr. Pappas knew the import of these disclosures.

4.     The other defendants were franchise sales agents or brokers engaged in the improper sale or offer of the franchise to Plaintiffs.  Mr. Richard Humphrey, and his entity

Franchise BIZ Experts, LLC, and William Litster and his entity, Ameridream Investments, LLC (aka the "Franchise Professor"), each acted as brokers / agents for the franchisor, and actively offered or sold Plaintiffs their franchised units.  In that process, they committed numerous NYFSA §683 violations (*e.g.* by failing to properly make required disclosures, by making earnings claims that were not properly registered or disclosed in the FDD, or by making other statements that were not properly disclosed within a FDD that was duly registered with the NY AG's Office).

5.      In addition, the statements made by the franchise brokers / agent Defendants in numerous presentations, e-mails, and powerpoint slides, were not just NYFSA §683 disclosure violations, but also constituted independent NYFSA §687 violations, as they included prohibited "earnings claims" and other materially misleading statements, stating *inter alia* that there were "high profit margins," "quick ROI with minimal investment" and other false or materially misleading statements that contradicted or were not present in the FDD (which notably stated that the franchisor makes no "Earnings claims" whatsoever).  Upon information and belief, there was no basis for Defendants to make those glowing earnings claims, as in 2012 only 12% of Bricks 4 Kidz franchises were profitable (*See e.g.* Settlement Order, Commonwealth of Virginia, ex rel. State Corp. Comm. v. BFK Franchise Complany, LLC, Case No. SEC-2016-00025 (June 2, 2016) (p. 2, in June of 2012 CFO's analysis showed only 12% of the system's franchises were profitable).

6.      Each of the Defendants is individually liable for, *inter alia* committing violations of §683 of the NYFSA ("disclosure violations") and also separately under §687 of the NYFSA (including misrepresentations / omissions that are actionable as unlawful acts in connection with the offer, sale or purchase of a franchise), either directly as "persons" defined by the NYFSA, or as a "control" person under NYFSA §691(3), for their materially aiding in the act constituting the violations.  Plaintiffs seek damages, and since these violations were willful and material under

§691 of the NYFSA, attorney's fees, costs, and potentially, rescission (as a potential election of remedies).

### Related Arbitration Against Franchisor

7.      There is a related arbitration.  Contemporaneously herewith, Plaintiffs are filing an arbitration demand against the franchisor BFK Franchise Company, LLC (d/b/a Bricks 4 Kidz) (the "Franchisor," "Bricks 4 Kidz" or "BFK") before the American Arbitration Association ("AAA"), as the Franchisor itself, and Plaintiffs, are bound to do so under certain dispute resolution provisions mandating that they arbitrate their disputes before the AAA.

### JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a) (1) (Diversity Jurisdiction), as Plaintiffs reside in the State of New York, and each of the Defendants reside outside of the state of New York (so complete diversity exists), and the amount in controversy exceeds the jurisdictional minimum, exclusive of interest and costs, under 28 U.S.C. §1332(a).

9.      Venue is proper in this district, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York, and Plaintiffs' franchised business was located in the County of Suffolk.

### THE PARTIES

10.      Plaintiff Team Kasa, LLC d/b/a Bricks 4 Kidz ("Team Kasa") is a limited liability company organized under the laws of the State of New York, with its principal office at 990 Station Road, Bellport, New York 11713.  Team Kasa, LLC is a franchisee of Bricks for Kids, pursuant

to two separate franchise agreements, both executed on February 24, 2014, and franchised under the first Franchise Agreement ("FA I") for a territory including zip codes listed as 11705; 11715; 11772; 11713; 11769; 11782; and 11796; and under a second Franchise Agreement ("FA II") for a territory including zip codes listed as 11968; 11976; 11932; 11962; 11963; 11975; 11937; 11930; 11946; 11942; 11959; 11978; 11977; 11972; 11941; and 11960 (Plaintiffs' franchised business was located in the County of Suffolk).

11.     Claimant Karen June ("Ms. June") is an individual resident of the State of New York.  Her residential address is 95 Academy Street, Bayport, NY 11705.  Ms. June is an owner of Team Kasa.

12.     Claimant AnnMarie Szollosi Gilbert ("Ms. Gilbert") is an individual resident of the State of New York.  Her residential address is 6 Steven Court, Patchogue, NY 11772.  Ms. Gilbert is an owner of Team Kasa.

13.     Claimant Alexander Gilbert ("Mr. Gilbert") is an individual resident of the State of New York.  His residential address is 6 Steven Court, Patchogue, NY 11772.  Mr. Gilbert is an owner of Team Kasa.

14.     Defendant Brian Pappas ("Defendant Pappas") is the former CEO of Creative Learning Corporation (the parent entity of the Franchisor BFK), and is a founder/managing member of BFK (and held these positions at the times relevant to this instant action)).  Mr. Pappas is also managing member / manager of Defendant FranVentures, LLC (from which one of the disclosure violations and improperly issued FDDs issued, discussed *infra*).  Upon information and belief, Mr. Pappas resides in Florida.  Mr. Pappas is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

5

15.     Defendant Franchise Ventures, LLC (Defendant "Franchise Ventures") is, upon information and belief, a Florida LLC with a business address of 796 Cypress Crossing Trail, St. Augustine, FL 32095.  Mr. Pappas is the managing member / manager of Defendant Franchise Ventures, LLC.  Franchise Ventures, LLC is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

16.     Defendant Richard Humphrey (aka Dick Humphrey) ("Defendant Humphrey"), is an individual who, upon information and belief, resides in Colorado.  Defendant Humphrey identified himself as "Brand Manager for Bricks 4 Kidz Franchise Company, LLC, utilized its corporate office address in his contact information, and otherwise acted as a sales agent or broker for the Franchisor in the offer or sale of the franchise to Plaintiffs.  Upon information and belief, his is the owner / principal officer of his business, Defendant Franchise Biz. Experts, LLC. Defendant Richard Humphrey is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

17.     Defendant Franchise BIZ Experts, LLC (Defendant "Franchise BIZ Experts"), upon information and belief, is a Colorado LLC, with a business address of P.O. Box 25839, 68 Salt Lick Circle, Silverthorne, CO 80497.  Defendant Franchise BIZ Experts acted as a sales agent or broker for the Franchisor in the offer or sale of the franchise to Plaintiffs.  Defendant Franchise BIZ Experts, LLC is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

18.     Defendants William Brent Litster (aka Bill Litster) ("Defendant Litster") is an individual who upon information and belief is a resident of Kansas City, Missouri.  Defendant Litster is President of Defendant Ameridream Investments LLC (aka "Franchise Professor.com"). Defendant Litster acted as a sales agent or broker for the Franchisor in the offer or sale of the

franchise to Plaintiffs. Defendant Litster is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

19.     Defendant Ameridream Investments LLC (aka and d/b/a the "Franchise Professor") ("Ameridream" or "Franchise Professor") is, upon information and belief, an LLC formed under the laws of Missouri, with a registered business address of 8821 N. Askew Ct. Kansas City, MO 64156. Defendant Franchise Professor acted as a sales agent or broker for the Franchisor in the offer or sale of the franchise to Plaintiffs. Defendant Ameridream Investments, LLC is either a "person" subject to liability under the NYFSA, or a "control" person under §691(3) of the NYFSA.

## **Factual Allegations**

20.     Bricks 4 Kidz ("BFK") offers franchises for the operation of a "service business within a defined exclusive territory, providing project-based programs designed to teach principles and methods of engineering to children ages 3-13+, using LEGO® bricks." (FDD, Item 1, p.1).

21.     Plaintiffs became franchisees of the Bricks 4 Kidz franchise system pursuant to two separate franchise agreements, both executed on February 24, 2014.

22.     The first Franchise Agreement ("FA I") was for a territory including zip codes listed as 11705; 11715; 11772; 11713; 11769; 11782; and 11796.

23.     The second Franchise Agreement ("FA II") was for a territory including zip codes listed as 11968; 11976; 11932; 11962; 11963; 11975; 11937; 11930; 11946; 11942; 11959; 11978; 11977; 11972; 11941; and 11960.

24.     The Parties to the Franchise Agreements are BFK Franchise Company, LLC, located at 701 Maret St., Suite 113, St. Augustine, FL 32095 (the "Franchisor," "BFK" or "Bricks 4 Kidz") on the one hand, and Plaintiff Team Kasa, LLC on the other.

25.     On or about February 1, 2014, Ms. June contacted Mr. Litster, a franchise broker for BFK Franchise Company (who calls himself the "franchise professor"), regarding franchising opportunities with BFK Franchise Company.

26.     Mr. Litster, and his company, together with Mr. Humphrey, and his company, (as "the Bricks 4 Kidz Brand Director for FranService and International Franchise Professional Group"), started communicating regularly with Ms. June on behalf of the Franchisor and providing her with information regarding the BFK Franchising Company's franchising opportunities.

27.     They acted as franchise sales agents or brokers for the purpose of offering to sell or selling the franchises to Plaintiffs.

28.     Upon information and belief, they were not properly registered as "agents" (duly authorized to represent the franchisor for the purposes of selling franchises in New York), with the New York Attorney General's Office, Dept. of Law, as required under the NYFSA, and associated regulations.

29.     Mr. Litster, along with and through his "Franchisor Professor" business, sent Plaintiff Karen June an e-mail on February 1, 2014 (a true and correct copy of this e-mail and its exhibits is attached hereto as composite "Exhibit A").

30.     This e-mail was sent prior to sending any FDD to Plaintiffs.

31.     This e-mail, and its attachments, tout the franchise system, and in doing so make a number of misrepresentations and claims (not present in the required Federal Disclosure Document), and commit multiple violations of NYFSA §683 (disclosure violations).

32.      Included in these disclosure violations, are impermissible "earnings claims."

33.     The FDD neither contains, nor discloses, earnings claims (indeed, the "Item 19" portion of the multiple FDDs Plaintiffs did ultimately receive, each stated specifically that the

company did **not** make Item 19 earnings projections, and contained no disclosure that would permit such "earnings claims").

34.    According to the Franchisor's 1/1/13 FDD and 1/13/14 FDD, the Franchisor does "not make any representations about a franchisee's future financial performance or the past financial performance of company-owned or franchised outlets." (See Item 19, p. 24).  Given that the Franchisor does not make any such representation in its FDD, neither the Franchisor, nor its agents, were permitted to make any financial representations.

35.    Nonetheless, the e-mails contained multiple statements such as "Quick ROI with minimal investment;" "high profit margins;" "20 revenue profit centers for the franchisee resulting in multiple income streams to the bottom line revenue income;" and many other similar statements amounting to impermissible earnings claims or projections (that are not present in any FDD provided to Plaintiffs) (See Ex. A).

36.    Mr. Litster promised Ms. June, "Quick ROI with minimal investment; high profit margins; low overhead costs."  Mr. Litster also attached to the email certain promotional and informational materials, which reiterated the same impermissible earnings claims.  According to the attached BFK eBrochure (p.2), the Franchisor projected, "Quick ROI on your low-cost franchise"; and "high profit margins".  Similarly, according to the attached PowerPoint, dated 8/8/13 and "presented by Dick Humphrey" (pp. 3, 25), the franchise is "low cost"; requires "moderate overhead"; offers "high profit margins"; is "recession proof"; and provides "Quick ROI with minimal investment; high profit margins; low overhead costs."

37.    The statements go so far as to claim that the business is "recession resistant" or even "recession proof," "thrives in any economy."  Clearly they could make no such claim without violating NYFSA 683, as their own FDD acknowledged they made no such statements.

9

38.     Furthermore, many of these claims are false, misrepresentations, or omit critical information, making them further violations of NYFSA §687.  For example, at this point, upon information and belief, there was absolutely no basis for any of these "profitability" or earnings claims projections or statements.

39.     Upon information and belief, most units were not profitable.  (*See e.g.* Settlement Order, Commonwealth of Virginia, ex rel. State Corp. Comm. v. BFK Franchise Company, LLC, Case No. SEC-2016-00025 (June 2, 2016) (p. 2, CFO's analysis showed that in 2012 only 12% of the franchises were profitable).

40.     There were other misstatements beyond the financial earning claims throughout the materials.  These included statements that there was "NO national competition," which was not true.

41.     There was a critical omission regarding the basic business model.  The model envisions that a substantial portion of business is derived from working with schools (see e.g. "Current customer base of schools for the teachers and other faculty members").  In fact, many schools do not permit private for-profit entities (like Bricks 4 Kidz franchises) to work with schools (*See e.g.* Settlement Order, Commonwealth of Virginia, ex rel. State Corp. Comm. v. BFK Franchise Company, LLC, Case No. SEC-2016-00025 (June 2, 2016) (p. 2, CFO's analysis showed that 30-35% of schools in franchisees territories prohibited for-profit affiliation with programs, and that offering school programs was necessary for franchisees to be profitable).

42.     Therefore, the Franchisor, as well as its agents in selling the franchised units, knew or should have known that these statements were false, misleading, constituted material omissions, or otherwise violated NYFSA §687.

43.     On or about February 3, 2014, Mr. Humphrey, the Bricks 4 Kidz Brand Director for FranService and International Franchise Professional Group, invited Ms. June to a webinar through the website, www.joinme.com, so that he could present to her a PowerPoint presentation regarding the BFK franchise.  Mr. Humphrey made the presentation to Ms. June on the evening of February 3, 2014 at or around 7:00pm (Eastern Time), including many of the same impermissible earnings projections, business model omissions, and §687 violations detailed above.

44.     This electronic meeting qualified as a "personal meeting" under NYFSA § 683(8), and a violation, since there was no adequate FDD disclosure to the Franchisee before that meeting.

45.     The following day, on February 4, 2014, Mr. Humphrey spoke by phone with Mr. and Mrs. June, providing them with additional information about the BFK franchise on the call, reiterating and further confirming the same content of the February 1, 2014 e-mail projections (e.g. Fast ROI, High Profits, recession proof, etc.) and thereby again making the same statements that constitute §683 and §687 violations.

46.     On February 5, 2014, at 10:49am, Mr. Humphrey emailed Ms. June (cc: to Bill Litster), attaching several informational documents, including, *inter alia*, a copy of the Bricks 4 Kidz Franchise Disclosure Document (FDD).

47.     The attached FDD to this e-mail had an issuance date of January 1, 2013 and included BFK Franchising Company's 2010, 2011 and 2012 financial statements (ending as of September 30, for each fiscal year).  This FDD was required to be updated by the NYFSA, and had became "stale" on January 28, 2014 (calculated as 120 days after September 30, 2013— the close of the fiscal year for BFK Franchising Company).  So, even though a copy of the FDD was disclosed on February 5, 2014, more than 10 business days and 14 calendar days prior to the date of execution (as required under the NYFSA and FTC Rule, respectively), the FDD was "stale" –

resulting in a disclosure violation under the FTC Act and NYFSA, and was of no effect since it did not contain the required updated information.

48.     In an email to Mr. Litster on February 10, 2014, Ms. June confirmed her interest in purchasing a BFK franchise, and added that another couple, Mr. Gilbert and Ms. Szollosi (Gilbert), was considering a partnership together in becoming a franchisee.

49.     On or about February 11, 2014, Mr. Humphrey and Mr. Litster emailed Claimants regarding the incentives that BFK Franchising Company offered franchisees who purchase a second territory.

50.     Then, on or about February 13, 2014, Mr. Humphrey presented a PowerPoint presentation to Mr. Gilbert and Ms. Szollosi (Gilbert) regarding B4K Domestic Incentives via a webinar (net meeting)) (these power-points and presentations again made the same impermissible earnings claims, touted the model involving schools without disclosing that there was a real problem with school participation with for-profit entities, and claimed generally that the units were profitable).

51.     On or about February 13, 2014, Mr. Humphrey emailed "additional information" to Ms. June and Mr. Gilbert, attaching a copy of the PowerPoint presentation regarding B4K Domestic Incentives (which he utilized in his presentation earlier that day), as well as a copy of the FDD ("latest revision dated 4-12-13").   In the attached PowerPoint presentation, the Franchisor, by and through Mr. Humphrey, makes several representations about the BFK franchise, including promises of "high profit margins and retention rate" (p. 5), "Absolutely NO competition, Worldwide, that provides as many exclusive offerings and Revenue Profit Centers" (pp. 5, 34).   A true and correct copy of this e-mail with attachments, is attached hereto as composite "Exhibit B."

52.     In this PowerPoint presentation, which was substantially the same as the one emailed by Mr. Litster on 2/1/4, the Franchisor, by and though Mr. Humphrey, projected "modest investment and overhead"; and "high profit margins and retention rate"; and asserted that the business was "recession proof" (p.5)..

53.     In this same email, dated February 13, 2014, Mr. Humphrey requested that the Individual Claimants sign the FDD receipt to confirm their initial receipt of the FDD on February 5, 2014.  The FDD attached to this February 13, 2014 email was identified in the body of the email and in the attached file name as the 1/1/13 FDD.

54.     In fact, though, the attached FDD had an issuance date of January 13, 2014 and included BFK Franchising Company's 2011, 2012 and 2013 financial statements (ending as of September 30, for each fiscal year).

55.     This new FDD, for it to be adequate disclosure, had to have been provided at least 10 business days prior to the execution of the franchise agreements.  It was not.  Indeed, the Plaintiffs executed the franchise agreements on February 24, 2014 (which is only 6 business days, not counting President's Day, from February 13, 2014).

56.     Further, Humphrey, who knew or should of known of this disclosure violation, attempted to obscure this violation by having the FDD receipt signature page misrepresent what was provided to Plaintiffs, and when.  Ms. June, who did not notice the "sleight of hand" in changing the dates, emailed Mr. Humphrey and Mr. Litster (cc'd to Mr. Gilbert) a signed copy of the FDD receipt, with the incorrect dates.

57.     On or about February 20, 2014, Mr. Pappas emailed Ms. June and Mr. Gilbert drafts of the two franchise agreements for their review.  The Individual Claimants subsequently reviewed the agreements and informed the Franchisor of certain errors in the draft agreements.

58.     On February 22, 2014, Defendant Pappas, utilizing the franchise ventures entity to send Alex and Karen Gilbert an e-mail, sent Plaintiffs a "revised" FDD.  This FDD was called "NY FDD-ISSUE Date 1-13-2014," and notably contained the financials for the prior year. However, Mr. Pappas' attempt to disclose this FDD upon Plaintiffs on February 22, 2014, the Saturday before signing, was improper, and did not afford Plaintiffs adequate time to review the FDD (as provided by the NYFSA), as the disclosure was made a mere two days, and no business days, before Claimants signed the FAs (the following Monday).

59.     A true and correct copy of the February 22, 2014 transmittal e-mail, from Mr. Pappas (coming, notably, from his own company's e-mail, and not the franchisor) to Ms. June and Mr. Gilbert (cc'd to Mr. Humphrey), with attached revised copies of the franchise agreements, and the revised FD ("an update FDD" (sic)), is attached here to as composite "Exhibit C."

60.     The failure to disclose this current, January 13, 2014 FDD in timely fashion before execution of the FAs was material.  The 2014 FDD contains critical information that, if timely disclosed, could have alerted the Claimants to larger underlying problems with the business activities of the Franchisor and its principals (in particular, Pappas himself, *discussed below*) that would have dissuaded the Claimants from entering into their FAs in the first place.

61.     Specifically, the 2014 FDD, because it annexes the 2013 Financial Statements, includes disclosures (not included in the 2013 FDD) regarding loans extended to a related company in 2013.  In one loan in July 2013, the Company issued a $70,000 loan to a related company.

62.     The 2014 FDD disclosure of a loan to a related company is critical because, as more fully explained by the franchisor's parent itself in its EDGAR filing, the September 30, 2016 Annual Report (Form 10-K) for CLC, the parent company of BFK Franchising Company, such loans are likely illegal under the Sarbanes-Oxley Act of 2002 (See 2016 Form 10-K, CLC, p. 13).

The Franchisor knew or should have known that the disclosure of such loans was material since they formed the basis of a violation of federal law.

63.     Moreover, the July 2013 loan for $70,000, which was disclosed in the 2014 FDD, was a loan to AudioFlix, Inc., a company owned by Mr. Pappas.  This instance of self-dealing, as recent litigation filed by the Franchisor against Mr. Pappas demonstrates, was not an isolated event and reflected an underlying pattern of misconduct by Mr. Pappas.

64.     According to a June 23, 2016 lawsuit by CLC against Mr. Pappas, Mr. Pappas is alleged to have, *inter alia*, defrauded CLC by converting company assets and breaching his fiduciary duty of loyalty, and failed to implement adequate internal financial and corporate controls. (See e.g the 2016 Form 10-K, CLC, pp. 17-18).  Accordingly, had Plaintiffs been given the statutorily required review period, they would have been afforded the opportunity to properly review the disclosure regarding Pappas' self-dealing, and that information would have been material in their decision to purchase the franchises.

65.     The Plaintiffs would not have become involved with the franchisor had they known of the internal turmoil and self-dealing that was occurring.  It would have certainly raised "red flags" for Claimants and stopped them from signing the FAs.

66.     Upon information and belief, one or more of the FDDs disclosed upon the Individual Claimants prior to their execution of the FA was not properly registered with the New York Attorney's General Office.   If Respondent did, in fact, fail to properly register in New York before disclosing the FDD upon the Individual Claimants, Respondent is liable for yet another violation of the NYFSA.

67.     Furthermore, the 2016 EDGAR filing evince that at least Mr. Pappas, and the franchisor itself, knew or should have known, that there were internal issues that were omitted

from the FDD, and certainly were material disclosures that dealt with significant accounting and financial issues (as well as imminent litigation and investigations by the SEC). The failure to disclose this information was an independent §687 violation.

68.     In addition, as mentioned above, the presentations provided by the franchise sales agents / broker defendants in the powerpoint e-mails, the presentations by the agents, and even the representations in the FDD itself, all implied that franchisees could expect significant clientele and income from schools. In fact, the Franchisor, Pappas, and its agents, knew (or should have known) that such income associated with having programs affiliated with schools was not likely, since a large percentage of schools prohibit any affiliation with for-profit "after school" or other programs, such as those contemplated by the franchisor's business model. This was another significant omission.

69.     The Individual Claimants, Ms. June, Mr. Gilbert and Mrs. Gilbert flew down from New York to St. Augustine, Florida over the weekend of February 22-23, 2014 to attend BFK Franchise Company's Discovery Day on Monday, February 24, 2014. Discovery Day provided prospective franchisees with the opportunity to attend presentations and observe demonstrations about the franchised business, as well as visit a nearby franchised location.

70.     Based upon the afore-mentioned misrepresentations, material omissions, and improper disclosures (or lack of statutorily mandated disclosure), all of which constituted statutory violation of the NYFSA, Plaintiffs decided to purchase two BFK franchises.

71.     On February 24, 2014, Team Kasa, LLC, by and through its individual members, Ms. June (50% interest), Anne Marie Szolsi Gilbert (25% interest), and Alex Gilbert (25% interest), entered into two separate franchise agreements with the Franchisor: (1) FA I to operate

a BFK franchise in Protected Territory I; and (2) FA II to operate a BFK franchise in Protected Territory II.

72.     Despite their best efforts to operate a successful and revenue-generating franchised business, Individual Claimants have been unable to generate the revenue that they reasonably expected to make because, contrary to the improper earnings claims and misrepresentations made to them by the Franchisor's Defendant agents, brokers, and/or representatives, prior to the execution of the FAs.

73.     Plaintiffs fully performed under the franchise, and made all good faith efforts to succeed.

74.     However, the franchise did not generate a "quick ROI."

75.     The franchise has not been "profitable" – and in fact, has lost money.

76.     Schools are often prohibited by policy from even affiliating themselves with for-profit franchises such as Plaintiff's franchise, and that has been a significant issue for Plaintiffs in generating business (or any profit).

77.     In addition, there is, in fact, competition, including a competitor that Plaintiffs complained was operating in their territory, that Plaintiffs felt was actually infringing on the Bricks 4 Kids marks, trade dress, business plan and model, which has siphoned business from their protected territory.

78.     Unfortunately, in part since the Franchisor is in chaos (in no small part because of the financial issues, and significant turnover in management, due to the ongoing dispute between Pappas, and investigations into his potential wrongdoing), all of Plaintiff's complaints have been falling on deaf ears, and the encroaching competitor – with its potentially trademark (or tradedress) infringing activities, has been causing Plaintiffs additional damages because the Franchisor has

failed to take any action to protect its marks.  Therefore, contrary to the representations made, there are indeed significant competitors.

79.      Plaintiffs have lost money and never been able to operate at a profit.

80.      To date, Plaintiffs have paid in excess of $165,000 to cover expenses of the franchised business, including fees to the Franchisor.  Moreover, Claimants have over $55,000 in credit card debt that they are struggling to pare down and which may well balloon into something even more unmanageable if Claimants are unable to pay the loan off, and stop the high interest rates from kicking in.

81.      Plaintiffs have also, by virtue of working long hours without adequate compensation, been damaged in an amount to be determined for the fair value of the services they were forced to expend without adequate compensation, attempting to keep the franchised business from failing.

### AND AS FOR A FIRST CAUSE OF ACTION
### (NYFSA VIOLATIONS AGAINST DEFENDANTS PAPPAS AND FRANCHISE VENTURES, LLC)

82.      Plaintiffs repeat and re-allege the allegations set forth in this Complaint as if fully set forth herein.

83.      Defendant Defendant Brian Pappas ("Defendant Pappas"), as former CEO of Creative Learning Corporation (the parent entity of the Franchisor BFK, and founder/managing member of BFK, and his entity, Defendant FranVentures, LLC, qualifies as a "person" who is regulated under the NYFSA §§681 (5) and (13).

84.      In the alternative  Defendant Brian Pappas ("Defendant Pappas"), as former CEO of Creative Learning Corporation (the parent entity of the Franchisor BFK, and founder/managing member of BFK, and his entity, Defendant FranVentures, LLC, are "control persons" of the

Franchisor under §691(3) of the NYFSA. ("A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer…")

85.     Defendants Pappas and FranVentures materially aided in the act(s) of transaction(s) that constituted violations of the NYFSA.

86.     By the afore-mentioned misconduct, Defendants Pappas and FranVentures violated the New York Franchise Sales Act, N.Y. Gen. Bus. L §680 *et seq*. (the "NYSFSA") by violating *inter alia* Section §683 (regarding disclosure requirements) and Section § 687 (making false or materially misleading oral and written representations; failing to make proper or adequate disclosure, and making false statements in its FDD).

87.     The violations include violations of the disclosure requirements of §683 of the NYSFSA, for *inter alia* (1) failing to make proper disclosure or provide a prospectus prior to selling or attempting to sell the franchises to Plaintiffs (or failing to do so within the time frames required), (2) upon information and belief, failing to register an offering prospectus with the NY AG's Office, (3) failing to disclose "financial performance representations" in the proper manner, or making such financial projections without placing them in a properly registered FDD, and (4) failing to disclose material information (such as the loans that led to the discovery of the financial issues, SEC investigations into Sarbanes Oxley Act violations, and potential malfeasance of Pappas himself).

88.     The violations include violations of §687 of the NYFSA, for *inter alia* (1) "violating any provision of this article," and (2) "for any person in connection with the offer, sale or purchase of any franchise, to directly or indirectly (a) Employ any devise, scheme or artifice to defraud; (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, not misleading… or (c) engage in any act practice or course of business which operates or would operate as a fraud or deceit upon any person."

89.     Plaintiffs were damaged by Defendant's violations in an amount to be determined at trial, which are recoverable under §691 of the NYFSA.

90.     Additionally, such violations were "willful and material" under §691(a) of the NYFSA, additionally entitling Plaintiffs to rescission (affording Plaintiffs an election of remedies as applicable), interest (at a rate of 6% per annum), reasonable attorney's fees, and costs, in an amount to be determined at trial.

## AND AS FOR A SECOND CAUSE OF ACTION
### (NYFSA VIOLATIONS AGAINST DEFENDANTS HUMPHREY, FRANCHISE BIZ EXPERTS, LLC, LITSTER, AND AMERIDREAM INVESTMENTS, LLC)

91.     Plaintiffs repeat and re-allege the allegations set forth in this Complaint as if fully set forth herein.

92.     Defendants Humphrey, Franchise Biz Experts, LLC, William Litster, and Ameridream Investments, LLC (the "Franchise Broker Defendants"), were each acting as sales or other agents, brokers, agents, or otherwise offering or selling franchises to Plaintiffs in the state of New York.

93.     The Franchisor either directly authorized such activity, or did so implicitly when it accepted their services, and the execution of the franchise agreements by Plaintiffs.

94.     Defendants Richard Humphrey, and his business Franchise BIZ Experts, LLC, qualify as a "persons" who are regulated under the NYFSA §§681 (5) and (13). They acted at all relevant times as an agent and/or broker in selling the franchises to Plaintiffs. In the alternative, they are "control" persons of the Franchisor under §691(3) of the NYFSA, as they materially aided in the act(s) of transaction(s) that constituted violations of the NYFSA ("A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer…").

95.     William Litster and Ameridream Investments, LLC (aka the "Franchise Professor") qualify as a "persons" who are regulated under the NYFSA §§681 (5) and (13). They acted at all relevant times as an agent and/or broker in selling the franchises to Plaintiffs. In the alternative, they are "control" persons of the Franchisor under §691(3) of the NYFSA, as they materially aided in the act(s) of transaction(s) that constituted violations of the NYFSA ("A person who directly or indirectly controls a person liable under this article, a partner in a firm so liable, a principal executive officer or director of a corporation so liable, a person occupying a similar status or performing similar functions, and an employee of a person so liable, who materially aids in the act of transaction constituting the violation, is also liable jointly and severally with and to the same extent as the controlled person, partnership, corporation or employer…").

96.     By the afore-mentioned misconduct, the Franchise Broker Defendants each independently violated the New York Franchise Sales Act, N.Y. Gen. Bus. L §680 *et seq*. (the "NYSFSA") by violating *inter alia* Section §683 (regarding disclosure requirements) and Section

§ 687 (making false or materially misleading oral and written representations; failing to make proper or adequate disclosure, and making false statements in its FDD).

97.      The violations include violations of the disclosure requirements of §683 of the NYSFSA, for *inter alia* (1) failing to make proper disclosure or provide a registered active (or "live") prospectus prior to selling or attempting to sell the franchises to Plaintiffs (or failing to do so within the time frames required), (2) failing to register an offering prospectus with the NY AG's Office, and (3) failing to disclose "financial performance representations" in the proper manner, or making such financial projections without placing them in a properly registered FDD.

98.      The violations include violations of §687 of the NYFSA, for *inter alia* (1) "violating any provision of this article," and (2) "for any person in connection with the offer, sale or purchase of any franchise, to directly or indirectly (a) Employ any devise, scheme or artifice to defraud; (b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, not misleading… or (c) engage in any act practice or course of business which operates or would operate as a fraud or deceit upon any person."

99.      Plaintiffs were damaged by the Franchise Broker Defendants' violations in an amount to be determined at trial, which are recoverable under §691 of the NYFSA.

100.     Additionally, such violations by the Franchise Broker Defendants were "willful and material" under §691(a) of the NYFSA, additionally entitling Plaintiffs to rescission (affording Plaintiffs an election of remedies as applicable), interest (at a rate of 6% per annum), reasonably attorney's fees, and costs, in an amount to be determined at trial.


**WHEREFORE**, Claimants demand judgment as follows:

a.      For damages, including actual, compensatory, general, special and other damages,

in a sum to be determined at trial, together with cost, pre-judgment and post-judgment interest, and attorney's fees;

      b.      All other statutory damages to which Claimants are entitled, including rescission and associated rescission damages, attorney's fees, costs, and statutory interest at 6%;

      c.      Where not already awarded, disbursements, costs, and attorney's fees; and

      d.      Where not already awarded, all such further relief as the Court may deem necessary, or as may be just or equitable under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Dated: New York, New York
       February 24. 2017

                                       Respectfully Submitted

                                       By: _____

                                         John A. Karol, Esq. [JK-9899]
                                   THE RICHARD L. ROSEN LAW FIRM, PLLC
                                   Attorneys for Plaintiffs
                                   110 East 59th Street, 23rd Floor
                                   New York, New York 10022
                                   (212) 644-6644
                                   jak@rosenlawpllc.com